# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRYAN H. SIMMS  :
32 Hitchcock Rd.  :
Westport, CT 06880,  :
                                 :
           Plaintiff,  :
                                 :     **Case: 1:08-cv-00177-RWR**
    v.  :     **Hon. Richard W. Roberts**
                                 :
BALL STREET VENTURES, LLC  :
1000 Wisconsin Ave., N.W., Suite G-100  :
Washington, D.C. 20007;  :
                                 :
BALL STREET PARTNERS, LLC  :
1000 Wisconsin Ave., N.W., Suite G-100  :
Washington, D.C. 20007;  :
                                 :
BALL STREET FUND, LLC  :
1000 Wisconsin Ave., N.W., Suite G-100  :
Washington, D.C. 20007;  :
                                 :
CHRISTIAN LAETTNER  :
1041 Ponte Verda Blvd.  :
Ponte Verda Beach, FL 32082; and  :
                                 :
BRIAN K. DAVIS  :
2230 Massachusetts Ave., N.W.  :
Washington, D.C. 20008,  :
                                 :
           Defendants.  :
                                 :

## DEFENDANTS' MOTION TO DISMISS BALL STREET FUND, BRIAN K. DAVIS AND CHRISTIAN LAETTNER AS PARTIES TO THE ACTION AND TO DISMISS COUNTS II AND III OF PLAINTIFF'S COMPLAINT

Defendants Ball Street Ventures, L.L.C. ("Ventures"), Ball Street Partners, L.L.C. ("Partners"), Ball Street Fund, L.L.C. ("Fund"), Christian Laettner ("Laettner"), and Brian K. Davis ("Davis") (collectively, "Defendants"), by and through their undersigned counsel, respectfully move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss

Fund, Davis and Laettner as parties to this action, and to dismiss Counts II and III of Plaintiff's Complaint. In support of this Motion, the Defendants submit their supporting points and authorities in support of their motion to dismiss and state as follows:

1.     Plaintiff Bryan H. Simms ("Simms") asserts a number of claims against his former employers, Ventures and Partners, as well as against two members of those entities, Davis and Laettner, and another entity that played no role in his employment, Fund.

2.     Simms' claims generally arise out of an alleged breach of the employment agreement between Simms, Ventures, and Partners.

3     In his Complaint, Simms attempts to expand this alleged breach of contract to include impermissible claims of tortious breach of contract and breach of the covenant of good faith and fair dealing.

4.     Further seeking to expand the reach of his Complaint, Simms attempts to add improper defendants to this action, including Davis, Laettner, and Fund.

5.     The aforementioned allegations should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), because they fail to state a claim upon which relief can be granted.

**WHEREFORE**, for the above reasons, and for the reasons detailed in Defendants' Statement of Points and Authorities in Support of their Motion to Dismiss, Defendants respectfully request that this Court dismiss Fund, Davis, and Laettner as parties to this action, and dismiss Counts II and III of Plaintiff's Complaint.

April 24, 2008

Respectfully submitted,

SCHIFF HARDIN LLP

By: /s/ Jeffrey S. Jacobovitz
Jeffrey S. Jacobovitz, Esq.
D.C. Bar # 346569
1666 K Street, N.W., Suite 300
Washington, D.C. 20006
Tel: (202) 778-6400
Fax: (202) 778-6460
Email: jjacobovitz@schiffhardin.com
*Attorney for Defendants Ball Street Ventures, LLC;*
*Ball Street Partners, LLC, Ball Street Fund, LLC,*
*Christian Laettner, and Brian K. Davis*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **BRYAN H. SIMMS** | : |  |
| **32 Hitchcock Rd.** | : |  |
| **Westport, CT 06880,** | : |  |
|  | : |  |
| **Plaintiff,** | : |  |
|  | : | **Case: 1:08-cv-00177-RWR** |
| **v.** | : | **Hon. Richard W. Roberts** |
|  | : |  |
| **BALL STREET VENTURES, LLC** | : |  |
| **1000 Wisconsin Ave., N.W., Suite G-100** | : |  |
| **Washington, D.C. 20007;** | : |  |
|  | : |  |
| **BALL STREET PARTNERS, LLC** | : |  |
| **1000 Wisconsin Ave., N.W., Suite G-100** | : |  |
| **Washington, D.C. 20007;** | : |  |
|  | : |  |
| **BALL STREET FUND, LLC** | : |  |
| **1000 Wisconsin Ave., N.W., Suite G-100** | : |  |
| **Washington, D.C. 20007;** | : |  |
|  | : |  |
| **CHRISTIAN LAETTNER** | : |  |
| **1041 Ponte Verda Blvd.** | : |  |
| **Ponte Verda Beach, FL 32082; and** | : |  |
|  | : |  |
| **BRIAN K. DAVIS** | : |  |
| **2230 Massachusetts Ave., N.W.** | : |  |
| **Washington, D.C. 20008,** | : |  |
|  | : |  |
| **Defendants.** | : |  |
|  | : |  |

## DEFENDANTS' STATEMENT OF POINTS AND AUTHORITIES
## IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Ball Street Ventures, L.L.C. ("Ventures"), Ball Street Partners, L.L.C. ("Partners"), Ball Street Fund, L.L.C. ("Fund"), Brian K. Davis ("Davis"), and Christian Laettner ("Laettner"), through their attorneys, submit the following memorandum of law in support of their Motion to Dismiss Fund, Davis, and Laettner as parties to this action, and to Dismiss Counts II and III of Plaintiff's Complaint.

## INTRODUCTION

Plaintiff Bryan H. Simms ("Simms") asserts a number of claims against his former employers, Ventures and Partners, as well as against two members of those entities, Davis and Laettner, and another entity that played no role in his employment, Fund.  Simms' claims essentially arise out of an alleged breach of the employment agreement between Simms, Ventures, and Partners.  In his Complaint, however, Simms attempts to expand this alleged breach of contract to include impermissible claims of tortious breach of contract and breach of the covenant of good faith and fair dealing.  Further seeking to expand the reach of his Complaint, Simms attempts to add improper defendants to this action, including Davis, Laettner, and Fund.

In his additional claims, Simms alleges (1) that Defendants not only breached his employment agreement, but did so in such a way to raise the alleged breach to the level of tortious conduct (Complaint, ¶¶ 28-31), and (2) that Defendants, in allegedly breaching his employment agreement, also breached an implied covenant of good faith and fair dealing (Complaint, ¶¶ 32-38).  These allegations fail to state a claim and should be dismissed.  Neither cause of action is viable under Virginia law, which applies to this action by the terms of the employment agreement Simms alleges defendants breached.  (Employment Agreement, attached hereto as Exhibit A ("Ex. A"), at Section 4.3.)

Further, Simms purports to state claims against Davis and Laettner in their individual capacities, and against Fund.  Nowhere in his Complaint, however, does Simms allege any action on the part of Fund that would constitute a viable cause of action against that entity.  In addition, the only actions Simms alleges on the part of Davis or Laettner are taken in their roles as members of Ventures and Partners, which are not sufficient to impose liability on either Defendant in their individual capacities.

These inappropriate causes of action – found in Counts II and III of Simms' Complaint – should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), as those claims fail to state a claim upon which relief can be granted.  Defendants Davis, Laettner, and Fund should also be dismissed pursuant to Rule 12(b)(6), as Simms' Complaint states no cause of action against those defendants.[1]

## BACKGROUND

Ventures and Partners are two of several entities owned by Davis and Laettner, which have a focus on real estate investment and development in various locations on the East Coast, including the District of Columbia.  As the entities' development efforts expanded, the need for a Chief Executive Officer to coordinate those efforts became apparent. Simms and Davis attended college together at Duke University.  (Complaint, ¶ 11.)  As a result, they have been acquainted for nearly twenty years.  (Id.)  After a period of negotiations, Davis, on behalf of Ventures and Partners, decided to hire Simms as the Chief Executive Officer for Ventures, and, on or about September 10, 2007, entered into an agreement with Simms regarding his employment.  (Complaint, ¶¶ 10, 12.)

The employment relationship with Simms, unfortunately, did not turn out as expected.  Davis was disappointed with Simms' performance (or lack thereof) as CEO for Ventures, and believed that Simms had not carried through on promises made during the negotiations for his employment.   Davis therefore terminated Simms' employment in early December 2007.  (Complaint, ¶ 21.)

---

[1] For purposes of this Motion, Defendants assume that the facts as pleaded in the Complaint are true.  Defendants, however, reserve the right to dispute those facts in later proceedings.

**ARGUMENT**

Although the crux of Simms' claim is breach of contract, Simms has also pleaded tortious breach of contract and breach of the covenant of good faith and fair dealing. Those claims, which are found in Counts II and III of Simms' Complaint, should be dismissed pursuant to Rule 12(b)(6) because they fail to state a claim. Defendants Davis, Laettner, and Fund should also be dismissed from this action, pursuant to Rule 12(b)(6), because Simms fails to state a claim against them.

**I.    Legal Standards**

While it is true that on a motion to dismiss, all factual allegations in the plaintiff's complaint are accepted as true, a complaint should still be dismissed if its factual allegations do not raise the plaintiff's right to relief "above the speculative level." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *Hayes v. Chao*, --- F. Supp. 2d ---, 2008 WL 862155, *2 (D.D.C. Apr. 2, 2008) (attached hereto as Exhibit B); *Newman v. Borders, Inc.*, 530 F. Supp. 2d 346, 348 (D.D.C. 2008) (Roberts, J.). The plaintiff must present more than labels and conclusions; "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65; *Newman*, 530 F. Supp. 2d. at 348. Here, as discussed above, Plaintiff fails to raise his entitlement to relief under several of his claims – and against several of the named defendants – above mere speculation.

**II.    Ball Street Fund Should Be Dismissed as a Party to this Action, as the Complaint Contains No Allegations Specific to Fund.**

Federal Rule of Civil Procedure 8(a) provides that, in bringing a complaint, a plaintiff must allege "a short and plain statement of the claim" that will give the defendant fair notice of what the claim is, and the basis for that claim. Fed. R. Civ. P. 8(a); *Major v. Plumbers Local Union No. 5*, 370 F. Supp. 2d 118, 123 (D.D.C. 2005). When a complaint does not provide the

required "short and plain statement," but instead relies on vague and conclusory statements, the complaint does not comply with Rule 8(a), does not provide the defendant with fair notice of the plaintiff's claims, and is subject to dismissal. *Hilska v. Jones*, 217 F.R.D. 16, 21 (D.D.C. 2003).

Simms provides no "short and plain statement" as to what his claim is against Fund, nor on what basis he makes a claim against that entity. The only allegations in Simms' Complaint specifically directed at Fund are (1) the paragraph wherein he recites the jurisdictional allegations regarding Fund (Complaint, ¶ 4), and (2) his conclusory statement that Fund was a joint employer, with Ventures and Partners, of Simms. (Complaint, ¶ 5.) Neither allegation establishes a cause of action against Fund; in fact, Fund was not even a party to the employment agreement central to Simms' claims. (*See* Ex. A.) Fund therefore has no fair notice of what claims Simms is making against it, and should therefore be dismissed as a party to this action.

## III.    Davis and Laettner, in their Individual Capacities, Should Be Dismissed from this Action.

In his Complaint, Simms attempts to state claims against both Davis and Laettner, in their individual capacities, for the acts allegedly surrounding his employment by Ventures and Partners. Simms repeatedly alleges that "[a]s de facto partners of BSV, BSP, and BSF, Defendants Davis and Laettner are jointly and severally liable for all damages assessed against BSV, BSP, and/or BSF." (Complaint, ¶¶ 27, 31, 38, 44, 51.) Simms fails, however, to allege any conduct by either Davis or Laettner other than acts taken in their roles as members of Ventures or Partners; in fact, he alleges no conduct specifically by Laettner whatsoever. Simms therefore fails to state a claim against either Davis or Laettner in their individual capacities, based on their status as members of the LLCs, and both individuals should be dismissed as defendants to this matter.

Simms' claims against all defendants in this matter center on an alleged breach of the employment agreement between Ventures, Partners, and Simms. His attempt to hold Davis and Laettner individually liable for that alleged breach of contract is unavailing. As a general rule, the members of a limited liability company ("LLC") are not liable for contracts made on behalf of the company. 6 Del. C. § 18-303; Restatement (2d) of Agency § 328 (1958) (agent of a disclosed principal is not liable on the contract); *Wierbicki v. Advatech, LLC*, No 1:06-cv-269, 2007 WL 2725944, *4 (E.D. Tenn. Sept. 17, 2007) (attached hereto as Exhibit C) (applying Delaware law). This rule holds true even where the member is the individual who represents the LLC in the contract negotiations and formation, as an LLC (like a corporation) can only act through its members. If the LLC's existence and status is disclosed to the other party, liability does not attach to the individual member acting in a representative capacity. *Cf. Luna v. A.E. Engineering Services*, 938 A.2d 744, 748 (D.C. 2007) (allowing contractual claim against member of LLC because existence of LLC was not disclosed).

In this instance, the employment agreement at issue clearly states that the parties involved are Simms, on the one hand, and the two LLCs (Ventures and Partners), on the other hand. (Ex. A, p. 1.) The existence and status of Ventures and Partners are disclosed in the writing (id.), and admitted by Simms in his Complaint. (Complaint, ¶¶ 2-3.) While the Complaint alleges acts purportedly taken by Davis during the negotiation and formation of the employment agreement (Complaint, ¶ 11.), it also acknowledges that the parties entering into the agreement with Simms were Ventures and Partners. (Complaint, ¶ 10.) Further, the signature page of the agreement itself clearly indicates that Davis was signing the agreement on behalf of the LLCs, in a representative capacity. (Ex. A, p. 8.) Finally, the Complaint offers no allegations regarding acts purportedly undertaken by Laettner, in any capacity.

No basis is presented by Simms for disregarding the general rule limiting the individual liability of LLC members. In fact, the law of limited liability companies specifically precludes the kind of "vicarious liability" Simms seeks to impose on Davis and Laettner. *See, e.g. Wierbicki*, 2007 WL 2725944 at *3 (LLC shields members from types of vicarious liability potentially imposed on partners); *Great Lakes Chem. Corp. v. Monsanto Co.*, 96 F. Supp. 2d 376, 383 (D. Del. 2000) ("LLCs members, unlike partners in general partnerships, may have limited liability, such that LLC members who are involved in managing the LLC may avoid becoming personally liable for its debts and obligations"). Ventures and Partners were formed as LLCs, and thus its members (including Davis and Laettner) are shielded from this type of vicarious liability. Davis and Laettner, in their individual capacities, should therefore be dismissed as defendants to this action.

**IV.    Count II Must Be Dismissed Because No Such Cause of Action Exists Under Virginia Law.**

Count II of Plaintiff's Complaint attempts to state a claim for tortious breach of contract. Plaintiff's claim must be dismissed because he alleges no independent tort beyond a mere alleged breach of the duties imposed by contract, and therefore does not state a cause of action under Virginia law. [2]

In Virginia, the "economic loss" doctrine bars recovery for tort claims where the plaintiff alleges solely economic damages for the defendant's alleged breach of contract. *See, e.g., City of Richmond v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 446 (4th Cir. 1990). Thus, tort (punitive) damages are not recoverable when a plaintiff alleges breach of contract. The economic loss doctrine was adopted to restrain the "more or less inevitable efforts of lawyers to

---

[2] The employment agreement with Plaintiff specifies that Virginia law will apply in case of any dispute. (Ex. A, at Section 4.3.)

turn every breach of contract into a tort," and thereby add punitive damages to the list of potentially recoverable damages. *Id.* Such "inevitable efforts" are behind Plaintiff's attempt to claim tort damages for an alleged breach of contract in Count II of his Complaint.

Count II of Plaintiff's Complaint does nothing more than adopt the allegations underlying his claim for breach of contract, with the added allegation that Defendants' alleged breach was "calculated, flagrant, and in disregard of obligations of trust." (Complaint, ¶ 29.) Plaintiff further alleges that Defendants have acted "in bad faith, vexatiously, wantonly, and for oppressive reasons" (Complaint, ¶ 30), justifying his recovery in tort for Defendants' alleged actions. Tort damages, however, are not available for a breach of contract, "regardless of the motives underlying the breach." *17th Street Assoc., LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 599 (E.D. Va. 2005) (citing *Kamlar v. Haley*, 224 Va. 699, 707, 299 S.E.2d 514, 518 (1983)). Such damages are only available where the plaintiff pleads (and proves) an independent tort beyond the breach of contract itself. *Id.* This Plaintiff has failed to do.

In order to establish an independent tort, Plaintiff must establish breach of a duty between himself and Defendants that did not arise solely because of the contractual relationship between the parties. *17th Street Assoc.*, 373 F. Supp. 2d at 599; *Newman v. Fauquier County Public Schools*, 818 F.2d 861, **2 (4th Cir. 1987); *Foreign Mission Bd. v. Wade*. 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991). Nowhere in Plaintiff's Complaint does he allege any duty between him and Defendants aside from those that may have been brought about by the employment contract. Instead, Simms simply relies on Defendants' alleged bad motives for the breach of contract he claims in Count I of his Complaint. Without pleading such a duty independent of the contract, Plaintiff has failed to state a claim for an independent tort. Count II must be dismissed.

**V.    Count III Must Be Dismissed Because Employment Contracts Contain No Implied Provision of Good Faith and Fair Dealing.**

Plaintiff alleges in Count III of his Complaint that Defendants breached an implied covenant of good faith and fair dealing. His claim must be dismissed, however, because Virginia law does not recognize such a claim in connection with employment contracts.

Plaintiff's claims in this case center on his employment with Ventures and Partners, and the termination of that employment. In this claim, he asserts that Defendants, through their actions related to his employment, have breached an implied covenant of good faith and fair dealing that he claims must be read into his employment agreement. (Complaint, ¶¶ 33-34.) Virginia law, however, does not recognize a cause of action for such an implied covenant in connection with employment contracts. *See, e.g., Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 670 (E.D. Va. 2005) ("Virginia law is decidedly straightforward on this matter: the Commonwealth does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in employment contracts"); *Wright v. St. Charles Water Authority*, No. 0102-032, 2002 WL 31989105, *2 (Va. Cir. Ct. Jul. 11, 2002) (attached hereto as Exhibit D) (no implied covenant of good faith and fair dealing in an employment contract).

While Virginia courts refuse to imply such a covenant into *any* employment contract, the courts are especially resistant to doing so when the employment in question is at-will. Virginia follows the common law employment at-will doctrine. *See, e.g., Spiller v. James River Corp.*, No. LW-2216-3, 1993 WL 946387, *3 (Va. Cir. Ct. Dec. 23, 1993) (attached hereto as Exhibit E). The doctrine provides that when no term of employment is specified, the employment is presumed to be at will – meaning that either the employer or the employee can end the employment without incurring liability for wrongful discharge. *Id.* Recognition of an implied covenant of good faith and fair dealing in an employment contract would run counter to this

doctrine, and thus courts have even more strongly refused to imply such a covenant. *Id.; see also Wright*, 2002 WL 31989105 at *2 (no authority to imply such a covenant in an at-will employment contract); *Schryer v. VBR*, No. 101692, 1991 WL 835295, *3 (Va. Cir. Ct. Nov. 13, 1991) (same) (attached hereto as Exhibit F).

The employment agreement between Plaintiff and Defendants contains no set term of employment (*see* Ex. A), nor do Plaintiff's allegations even suggest that such a set term existed. Plaintiff's employment was therefore at-will, and Virginia's strong resistance to implying a covenant of good faith and fair dealing in such a contract is therefore especially applicable here. Count III of Plaintiff's Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Ball Street Fund, L.L.C., Brian K. Davis, and Christian Laettner as parties to this action, dismiss Counts II and III of Plaintiff's Complaint with prejudice, and grant such other relief as the Court may consider just.

Dated:  April 24, 2008

Respectfully submitted,

By: /s/ Jeffrey S. Jacobovitz
Jeffrey S. Jacobovitz, Esq.
Schiff Hardin LLP
D.C. Bar # 346569
1666 K Street, N.W., Suite 300
Washington, D.C. 20006
Tel:  (202) 778-6400
Fax:  (202) 778-6460
Email:  jjacobovitz@schiffhardin.com

*Attorney for Defendants Ball Street Ventures, L.L.C. Ball Street Partners, L.L.C., Ball Street Fund, L.L.C., Brian K. Davis, and Christian Laettner*

# EXHIBIT B

Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 862155 (D.D.C.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 862155)**

Hayes v. Chao
D.D.C.,2008.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Victor HAYES, Plaintiff,
v.
Elaine L. CHAO, Secretary, United States
Department of Labor, Defendant.
**Civil Action No. 06-2207 (CKK).**

April 2, 2008.

**Background:** Male former employee brought Title VII action against Department of Labor, alleging discrimination and retaliation. Agency moved for dismissal.

**Holdings:** The District Court, Kollar-Kotelly, J., held that:

(1) employee failed to exhaust administrative remedies, and

(2) employee failed to allege adverse employment action.

Motion granted.

**[1] Civil Rights 78 ☞1505(3)**

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
      78k1503 Administrative Agencies and Proceedings
         78k1505 Time for Proceedings; Limitations
            78k1505(3) k. Operation; Accrual and Computation. Most Cited Cases

**Civil Rights 78 ☞1514**

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
      78k1512 Exhaustion of Administrative Remedies Before Resort to Courts
         78k1514 k. Particular Cases. Most Cited Cases

**United States 393 ☞36**

393 United States
   393I Government in General
      393k36 k. Appointment or Employment and Tenure of Agents, Clerks, and Employees in General. Most Cited Cases
Male former employee who sued Department of Labor, alleging discrimination and retaliation, failed to exhaust his administrative remedies, as required to maintain claims under Title VII; employee did not contact Equal Employment Opportunity (EEO) counselor until more than 45 days from when he first raised issues, and no equitable reasons existed for employee's failure to meet deadline. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; 29 C.F.R. § 1614.105(a)(1).

**[2] Civil Rights 78 ☞1136**

78 Civil Rights
   78II Employment Practices
      78k1136 k. Compensation and Benefits. Most Cited Cases

**Civil Rights 78 ☞1249(1)**

78 Civil Rights
   78II Employment Practices
      78k1241 Retaliation for Exercise of Rights
         78k1249 Public Employment
            78k1249(1) k. In General. Most Cited Cases

**United States 393 ☞36**

393 United States
   393I Government in General
      393k36 k. Appointment or Employment and Tenure of Agents, Clerks, and Employees in General. Most Cited Cases
Male former employee who sued Department of Labor, alleging discrimination and retaliation, failed to aver that he suffered adverse employment action, as required to state claims under Title VII; complaint alleged only subjective uncertainty as to employee's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
Page 2

--- F.Supp.2d ----, 2008 WL 862155 (D.D.C.)

**(Cite as: --- F.Supp.2d ----, 2008 WL 862155)**

leave balances and inconvenience as result of agency's purported inaccurate statements concerning employee audits. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

Victor Hayes, Greenbelt, MD, pro se.
Alexander Daniel Shoaibi, U.S. Attorney's Office, Washington, DC, for Defendant.

### MEMORANDUM OPINION

COLLEEN KOLLAR-KOTELLY, District Judge.

**\*1** Plaintiff Victor Hayes ("Hayes"), proceeding *pro se,* brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* against Elaine L. Chao, in her official capacity as Secretary of the United States Department of Labor (the "Secretary"). Hayes, a former employee of the Department of Labor ("DOL"), claims that he was a victim of discrimination and retaliation because (1) several DOL employees incorrectly told him that an audit of his sick and annual leave balances had been performed in 2003, and (2) a DOL audit completed in June 2005 identified a 15-minute discrepancy in his leave balances. According to Hayes, this uncertainty has left him "in limbo" about whether to re-enter federal employment until the issues concerning his annual and sick leave balances "ha[ve] been resolved to his satisfaction."Compl. ¶¶ 36-37. Currently pending before the Court is Defendant's [8] Motion to Dismiss Hayes' Complaint based on the applicable statute of limitations, failure to exhaust administrative remedies, and failure to state a claim. After a thorough review of the Parties' submissions, applicable case law and statutory authority, the Court shall grant Defendant's Motion for the reasons that follow.

### I. BACKGROUND

The Court construes Hayes' *pro se* complaint liberally. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). In doing so, the Court notes that Hayes has attached supplemental materials to his Complaint and his Opposition, and the Secretary has also attached supplemental materials to her Motion to Dismiss.[FN1] The D.C. Circuit has instructed that lower courts may use supplemental materials to clarify a *pro se* plaintiff's claims without converting a motion to dismiss into one for summary judgment. *See Greenhill v.*

*Spellings,* 482 F.3d 569, 572 (D.C.Cir.2007) (explaining that lower courts may "consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged") (citing *Anyanwutaku v. Moore,* 151 F.3d 1053, 1054 (D.C.Cir.1998)). Courts may also consider documents attached to, or incorporated into, complaints (*pro se* or otherwise), as well as certain documents in the public record. *See Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 (D.C.Cir.1993) (affirming lower court's reliance on an administrative record when deciding a motion to dismiss, where the court used the record to resolve legal questions and not to test factual allegations in the complaint); *Koutny v. Martin,* 530 F.Supp.2d 84, 89 (D.D.C.2007) (explaining that a court may take notice of public documents, such as court records, when deciding a motion to dismiss). Based on the Court's review of Hayes's Complaint and the Parties' supplemental materials, Hayes appears to allege the following.

Hayes worked as an economist for the DOL from July 20, 1997 until December 13, 2002.[FN2]Compl. ¶ 4. Although Hayes worked for one or more private employers since leaving the DOL, he began "preparing to reenter federal employment" in April 2005. *Id.* ¶¶ 7-8. Hayes was concerned that his sick and annual leave balances were inaccurate, a problem that he discussed with his supervisors prior to leaving his position at the DOL in 2001 and 2002. *Id.* ¶ 8; Pl.'s Opp'n, Exs. 3-5 (emails from Hayes to his supervisors raising concerns about his sick and annual leave balances). Accordingly, Hayes decided to "verify that Defendant DOL had corrected his annual and sick leave balances after his separation of employment."*Id.* ¶ 8. Hayes sent an email to the DOL on April 27, 2005, asking about his leave balances. *Id.* ¶ 9. The DOL initially responded to Hayes by explaining that it could not, or had not, located his Official Personnel File ("OPF"), which might contain an audit of his leave balances. *Id.*

**\*2** Hayes claims that the DOL began "surreptitiously" auditing his leave balances after receiving his April 27, 2005 email. *Id.* ¶¶ 9-11. Based on his suspicions that the DOL "was being discriminatory against him regarding the missing audit," Hayes contacted the DOL's Civil Rights Center ("CRC"), which advised him to try resolving his concerns directly with the agency. *Id.* ¶¶ 14-15.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 862155 (D.D.C.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 862155)**

On May 6, 2005, Hayes sent another email to the DOL explaining that he was concerned about his leave balances. *Id.* ¶ 16. On May 9, 2005, the DOL responded to Hayes' email and indicated that the DOL was in possession of an audit of Hayes' leave balances that was purportedly in existence as of April 11, 2003. *Id.* ¶ 19. Hayes claims that this audit does not exist, and that the DOL lied to "stall for time and circumvent the EEO process" while the audit of Hayes' leave balances "was clandestinely being completed." *Id.* ¶ 21. Hayes claims that the DOL repeated this "stalling tactic" in June 2005 by again informing him of a nonexistent audit that was in the DOL's possession as of May 2005. *Id.* ¶ 24.

The DOL completed its audit of Hayes' leave balances on June 1, 2005, "confirming a 1/4 hour discrepancy in [ ] Hayes' sick leave balance [that] was based on inaccurate starting annual and sick leave balances." *Id.* ¶ 25. In addition to the 15-minute discrepancy, Hayes also faults the June 2005 audit because it did not reveal any missing annual leave "that represents compensation to [ ] Hayes when he returns to federal employment." *Id.* ¶ 26. Hayes further claims that Mike Allen, a DOL employee, admitted in December 2005 that there was not an audit of Hayes' leave balances in existence as of April 2003, which suggests to Hayes that "several of [the] DOL's employees lied regarding the existence of a signed and verified audit" of Hayes' leave balances. *Id.* ¶¶ 28-30.

Hayes alleges that he has been "in limbo since April 2005 regarding reentering federal employment until this issue regarding his annual and sick leave balances has been resolved to his satisfaction." *Id.* ¶ 36. Hayes further alleges that the DOL's "brazen lies regarding the existence of an audit" and its "inaccurate June 1, 2005 audit" has caused Hayes "inconvenience, loss of income due to missed federal job opportunities, and irreparable damages to his federal leave balances, especially his annual leave balance that represents compensation when he returns to federal employment." *Id.* ¶ 37.

The Secretary filed a Motion to Dismiss Hayes's Complaint for failure to state a claim on July 16, 2007. Hayes filed an Opposition to the Secretary's Motion on October 1, 2007, and the Secretary filed a Reply on October 26, 2007. The Motion has thus been fully briefed and is ripe for decision.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *accord Erickson v. Pardus*, 551 U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 1964-65; *see also Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 127 S.Ct. at 1965 (citations omitted).

**\*3** In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.,* 854 F.Supp. 914, 915 (D.D.C.1994); *see also Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). Where, as here, an action is brought by a *pro se* plaintiff, the Court must take particular care to construe the plaintiff's filings liberally for such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines,* 404 U.S. at 520-21. *See also Richardson v. United States,* 193 F.3d 545, 548 (D.C.Cir.1999). "Nonetheless, a *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Henthorn v. Dep't of Navy,* 29 F.3d 682, 684 (D.C.Cir.1994) (quoting *Crisafi v. Holland,* 655 F.2d 1305, 1308 (D.C.Cir.1981)).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 862155 (D.D.C.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 862155)**

### III. DISCUSSION

Giving Hayes the benefit of all possible inferences, and construing his Complaint liberally as a *pro se* plaintiff, the Court identifies three possible claims: (1) discrimination and retaliation based on the DOL's "brazen lies" concerning an audit of Hayes's leave balances in 2003; (2) discrimination and retaliation based on a 15-minute discrepancy of Hayes's leave balances identified by a June 2005 audit; and (3) injuries based on unidentified annual leave that was not revealed by the June 2005 audit. In the context of these claims, the Secretary raises three arguments based on the: (1) statute of limitations; (2) failure to exhaust administrative remedies; and (3) failure to state a claim. The Court shall examine Hayes's claims in the context of each of the Secretary's three arguments presented in her Motion to Dismiss.

#### A. Statute of Limitations

The Secretary initially argues that Hayes failed to file his Complaint within the 90-day statutory time limit after Hayes's administrative complaint was denied and his Motion for Reconsideration was rejected. Def.'s Mot. at 2. The Secretary reasons that the EEO issued its decision on September 6, 2006. *Id* . at 3. The decision advised Hayes that he had 90 days from the date he received the decision to file a civil action. *Id.* Allowing five calendar days for mailing, the Secretary argues that Hayes was required to initiate the instant action on or before December 11, 2006, but that he filed this action on December 26, 2006 (more than two weeks past due).*Id.*

Hayes exposes the flaw in the Secretary's logic in his Opposition by explaining that he filed his request to proceed *in forma pauperis* on December 4, 2006 (prior to the December 11, 2006 deadline for filing an action), which had the effect of tolling the limitations period until the Court ruled on his request. *See* Pl .'s Opp'n at 1-2. Hayes accurately describes the law in this and other circuits that tolls the 90-day time period while a *pro se* plaintiff waits for a court's ruling on an *in forma pauperis* application. *See Glenn v. Williams,* 2006 U.S. Dist. LEXIS 8687 at *33 (D.D.C. Feb. 21, 2006) ("[t]here is a significant body of case law, within and without the Circuit, indicating that tolling should apply [while the Court reviews an *in forma pauperis* application]"). Faced with Hayes' argument, the Secretary abandons her statute of

limitations argument in her Reply. *See* Def.'s Reply at 1-7. Accordingly, the Court finds that Hayes timely filed the present suit.

#### B. Exhaustion

*\*4* The Secretary next argues that Hayes failed to exhaust his administrative remedies, as reflected in the CRC's decision finding the same. *See* Def.'s Mot. at 3 n. 2 & Ex. 1 at 1-2 (CRC Decision). The CRC dismissed Hayes' complaint because he failed to contact an EEO counsel within 45 days from when he became aware of the issues associated with his sick and annual leave balances in 2001 and 2002. *See* Def.'s Mot., Ex. 1 at 1-2 (CRC Decision). Summarizing Hayes' EEO complaint, the CRC stated:

> [Hayes] explained that, in November 2001, 'management acknowledged that [his] annual and sick leave balances were out of sync.'[He] maintained that [he] requested administrative time to reconcile the balances but [it was] denied in November 2001, February 2002, and June 2002.[He] also [indicated] that management 'came up with an arbitrary figure regarding [his] annual and sick leave balances without performing an [sic] audit' in July 2002, and, in April 2003, 'claim[ed] to have performed' an audit. In conclusion, [he] alleged that management did not perform an audit until June 2005, which, however, did not 'correct' the leave balances.

*Id.* On the basis of Hayes' explanation, the CRC denied Hayes' complaint because he did not contact an EEO Counselor until May 2005, more than 45 days from when he first raised these issues in 2001 and 2002. *Id.* Piggybacking on the CRC's analysis, the Secretary argues that Hayes's "case should be dismissed because he did not timely exhaust his administrative remedies."Def.'s Reply at 2.

[1] Hayes fails to respond to the Secretary's exhaustion argument which, by itself, provides grounds for dismissal of his claims. *See Hopkins v. Women's Div., General Bd. of Global Ministries,* 238 F.Supp.2d 174, 178 (D.D.C.2002) ( "It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citing *FDIC v. Bender,* 127

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 862155 (D.D.C.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 862155)**

F.3d 58, 67-68 (D.C.Cir.1997)). Nevertheless, even if the Court were to consider the Secretary's argument on the merits, it is clear that certain of Hayes' claims must be dismissed for failing to exhaust his administrative remedies.

Under 29 C.F.R. § 1614.105(a)(1), an aggrieved party must initiate contact with an EEO counselor within 45 days of the date of the alleged discrimination or retaliation. *See McCants v. Glickman,* 180 F.Supp.2d 35, 39 (D.D.C.2001). The 45-day period runs from the time of the adverse act, not discovery of a discriminatory motive. *Id.* at 40 (citing *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)). That time limit is not jurisdictional, however, so it is subject to "equitable tolling, estoppel, and waiver." *Id.* The D.C. Circuit has explained that equitable considerations will only be used to toll Title VII time limitations "in extraordinary and carefully circumscribed instances ."*Mondy v. Sec'y of the Army,* 845 F.2d 1051, 1057 (D.C.Cir.1988). A plaintiff bears the burden of pleading and proving any equitable reasons for failing to meet the 45-day time limit to contact an agency's EEO counsel. *See Slatz v. Lehman,* 672 F.2d 207, 209 (D.C.Cir.1982).

*5 Hayes alleges that the DOL's June 2005 audit failed to reveal missing annual leave that he apparently believes he was owed. Compl. ¶ 26. Hayes's Complaint fails to explain any of the circumstances surrounding this missing leave, but the emails he attaches to his Opposition make it clear that he raised the issue of missing leave with his supervisors in 2001 and 2002. *See* Pl.'s Opp'n, Ex. 3-5 (emails between Hayes and his supervisors concerning his missing or inaccurate leave balances sent in November 2001, February 2002, and June 2002). For example, Hayes explained to his supervisor in a June 2002 email that he "met with Sandy McCain to discuss the disparities in [his] leave balances.").*Id.,* Ex. 5 at 1. Hayes also alleges in his Opposition that the DOL denied him the opportunity to audit his own annual and sick leave balances. *Id.* at 3. Although Hayes does not include any facts supporting this allegation in his Complaint (nor the date(s) on which he was denied administrative leave), the emails he attaches to his Opposition again make it clear that this allegation relates to events from 2002, when Hayes' supervisor denied him administrative leave to audit his leave balances until he completed the work that had been assigned to him. *See id.,* Ex. 4 (Emails between Hayes and supervisors sent February 2002) (responding to Hayes request for administrative leave, Hayes's supervisor stated "you may perform this administrative task after you have completed answering the outstanding emails assigned to you"). Consistent with the CRC's analysis, the Court finds that Hayes failed to initiate administrative review with respect to his leave balances within 45 days, as he waited until May 2005 to contact an EEO counselor concerning the same. Accordingly, Hayes' claims concerning these 2001 and 2002 acts must be dismissed for failure to exhaust his administrative remedies.

In contrast to the above, Hayes has asserted two claims that do not necessarily relate to the 2001 and 2002 period: (1) In mid-2005, several DOL employees allegedly lied to Hayes about a non-existent 2003 audit, and (2) the DOL released a June 2005 audit that identified a 15-minute discrepancy. That these claims might not relate to events in 2001 and 2002 apparently went unnoticed by the Secretary, whose perfunctory exhaustion argument does not provide any insight into why these claims should be treated as unexhausted. Because it appears that these claims are not subject to dismissal based on exhaustion (they relate to actions of the DOL in mid-2005), the Court shall proceed to the merits of Plaintiff's claims.[FN3]

*C. Failure to State a Claim*

To succeed on a claim of discrimination under Title VII, a plaintiff has the initial burden of establishing a *prima facie* case of discrimination by showing that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Stella v. Mineta,* 284 F.3d 135, 145 (D.C.Cir.2002). A *prima facie* case of retaliation requires a plaintiff to show that: (1) he engaged in statutorily protected activity; (2) the employer took an adverse action; and (3) there is a causal relationship between the two. *See Clipper v. Billington,* 414 F.Supp.2d 16, 25 (D.D.C.2006) (citing *Romero-Ostolaza v. Ridge,* 370 F. Sup.2d 139, 148 (D.D.C.2005)). A plaintiff may survive a motion to dismiss without pleading each of these *prima facie*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 862155 (D.D.C.)
(Cite as: --- F.Supp.2d ----, 2008 WL 862155)

elements. *See Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1115 (D.C.Cir.2000) (explaining that the phrase "I was turned down for a job because of my race" is sufficient to survive a motion to dismiss). Courts may, however, explore a plaintiff's complaint at the dismissal stage to determine whether a plaintiff can ever establish a *prima facie* case. *See Rattigan v. Gonzales,* 503 F.Supp.2d 56, 72 (D.D.C.2007); *Runkle v. Gonzales,* 391 F.Supp.2d 210, 221 (D.D.C.2005). In this regard, the Secretary argues that Hayes's claims of discrimination and retaliation must be dismissed because he cannot demonstrate the existence of an adverse employment action that is required for any Title VII claim against an employer.[FN4] Def.'s Mot. at 5. The Court agrees.

*6 For purposes of a discrimination claim, "an employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harms."*Forkkio v. Powell,* 306 F.3d 1127, 1131 (D.C.Cir.2002) (citing *Brown v. Brody,* 199 F.3d 446, 457 (D.C.Cir.1999)). Similarly, Title VII protects employees "not from all retaliation, but from retaliation that produces an injury or harm."*Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 2414, 165 L.Ed.2d 345 (2006). The "injury or harm" must be sufficiently material to dissuade a reasonable worker from making or supporting a charge of discrimination. *Id.* at 2415 ("[w]e speak of *material* adversity because we believe it is important to separate significant from trivial harms") (emphasis in original).

[2] Hayes has failed to identify a materially adverse consequence giving rise to a claim for either discrimination or retaliation. He explains that the uncertainty surrounding his leave balances has left him "in limbo," and that he has suffered "inconvenience" as a result of the DOL employees' inaccurate statements concerning a 2003 audit and a 15-minute discrepancy identified by the June 2005 audit. The courts in this Circuit have consistently held that a plaintiff's subjective feelings of harm cannot form the basis of an adverse action. *See Forkkio,* 306 F.3d at 1130-31 (D.C.Cir.2002) ("[p]urely subjective injuries, such as ... public humiliation or loss of reputation are not adverse actions") (internal citations omitted); *Rochon v.*

*Gonzales,* 438 F.3d 1211, 1219 (D.C.Cir.2006) ("not everything that makes an employee unhappy is an actionable adverse action") (quoting *Manning v. Metro. Life Ins. Co.,* 127 F.3d 686, 692 (8th Cir.1997)); *Childers v. Slater,* 44 F.Supp.2d 8, 19 (D.D.C.1999) ("Mere inconveniences will not rise to the level of adverse action"), *vacated in part on other grounds,*197 F.R.D. 185 (D.D.C.2000); *Carmona v. Snow,* 2007 U.S. Dist. LEXIS 21080 * 29 (D.D.C. Mar. 26, 2007) ("Although plaintiff certainly has established that her assigned office is an inconvenience to her, she cannot meet her *prima facie* burden of establishing discrimination based on 'mere inconvenience.' ") (quoting *Sanders v. N.Y. City Human Res. Admin.,* 361 F.3d 749, 755 (2d. Cir.2004)), *summarily aff'd,*2007 U.S.App. LEXIS 26167 (D.C.Cir. Nov. 6, 2007); *Dickerson v. Sectek, Inc.,* 238 F.Supp.2d 66, 75 (D.D.C.2002) (no adverse action in gender discrimination case where plaintiff's only harm "was physiological-the stress that she endured when faced with the prospect of losing her position").

Hayes comes closer to identifying an adverse action by alleging that he has "missed federal job opportunities," and has suffered "irreparable damage to his federal leave balances," Compl. ¶ 37, but he ultimately "plead[s] himself out of court,"*Sparrow,* 216 F.3d at 1116, by explaining that he has not applied for any federal position and has not yet suffered any actual harm. *See* Compl. ¶ 26 (explaining that Hayes believes he will be harmed "when he returns to federal employment"); *id.* ¶ 36 (explaining that Hayes has been "in limbo since April 2005 regarding reentering federal employment until this issue regarding his annual and sick leave balances has been resolved to his satisfaction"). Because Hayes's Complaint pleads that the consequences of the DOL's alleged discriminatory or retaliatory acts are only speculative harms, Hayes's claims must be dismissed at this stage. *See, e.g., Dage v. Johnson,* 2008 U.S. Dist. LEXIS 14086 at *51 (D.D.C. Feb. 27, 2008) ("[Plaintiff] was never actually removed from the [ ] program. His anxiety, while perhaps understandable given his delicate health condition, was speculative, subjective, and ultimately unfounded. Purely subject harm of this nature does not represent an actionable adverse action."); *Coleman v. Dist. of Columbia,* 2006 U.S. Dist. LEXIS 59117 at * 14 (D.D.C. Aug. 22, 2006) ("mere speculation that a letter of reprimand *may* lead to future punishment is insufficient to establish

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2008 WL 862155 (D.D.C.)
**(Cite as: --- F.Supp.2d ----, 2008 WL 862155)**

Page 7

an adverse employment action"); *Vargas v. Martinez,* 2005 U.S. Dist. LEXIS 7983 at *11 ("[Plaintiff's] speculative injury cannot form the basis of an adverse employment action-he has produced no evidence that he applied for and was denied a job because [his employer's actions]"). Similarly, the D.C. Circuit has repeatedly held that threats of *future* adverse actions are not tangible harms that may constitute adverse actions. *See* Forkkio, 306 F.3d at 1131 ("threats ... do not rise to the level of an adverse employment action because they result in no materially adverse consequences or objectively tangible harm"); *Lutkewitte v. Gonzales,* 436 F.3d 248, 271 (D.C.Cir.2006) (Brown, J., concurring) ("Threats of future adverse actions ... may culminate in a tangible employment action if carried out, but they do not themselves meet the standard."). Moreover, the idea that the DOL's misstatements about a 2003 audit or a 15-minute discrepancy in the DOL's June 2005 audit could lead to "irreparable damage" is implausible on its face, *see* Bell Atl. Corp., 127 S.Ct. at 1974 (holding that a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face"), and fails to surpass the minimum threshold necessary to plead more than a *de minimus* harm. *See* Rochon, 438 F.3d at 1219 (explaining that the D.C. Circuit has identified a "*de minimus* " threshold for both discrimination and retaliation claims). Accordingly, Hayes' claims based on the alleged misstatements of DOL employees and the DOL's June 2005 audit must be dismissed for failure to state a claim.

## IV. CONCLUSION

*7 For the reasons set forth above, the Court shall grant Defendant's [8] Motion to Dismiss. This case shall be dismissed in its entirety.

FN1. These materials include the Employment Opportunity Commission's ("EEO") denial of Hayes' Motion for Reconsideration (attached to Hayes' Complaint), emails between Hayes and his DOL supervisors sent in 2001 and 2002 (attached to Hayes' Opposition), and the Civil Rights Commission's decision denying Hayes's complaint (attached to the Secretary's Motion). Although the Parties have submitted other supplemental materials with their submissions, the Court has not relied on any documents other than those

referenced above to resolve the Secretary's Motion to Dismiss.

FN2. Where, as here, the defendant files a Motion to Dismiss for failure to state a claim, the Court assumes all facts alleged in the Complaint are true. *See* Bell Atl. Corp. v. Twombly, --- U.S. ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

FN3. Exhaustion is not a jurisdictional prerequisite to plaintiff's claims, and therefore, the Court need not resolve definitively that these claims have, in fact, been subject to administrative exhaustion. *See* Broom v. Caldera, 129 F.Supp.2d 25, 29 (D.D.C.2001) ("exhaustion [is] not jurisdictional in nature but rather [is a] statutory condition [ ] precedent to the instigation of litigation") (quoting Kennedy v. Whitehurst, 690 F.2d 951, 961 (D.C.Cir.1982)).

FN4. Because Hayes asserts both discrimination and retaliation claims, the Secretary's Motion should more accurately state that Hayes cannot demonstrate the existence of any "adverse action," as retaliation claims may be based on harms that are not employment-related. *See* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 54, 126 S.Ct. 2405, 2414, 165 L.Ed.2d 345 (2006) ("The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm").

D.D.C.,2008.
Hayes v. Chao
--- F.Supp.2d ----, 2008 WL 862155 (D.D.C.)

END OF DOCUMENT

# EXHIBIT C

Westlaw.

Slip Copy                                   Page 1
Slip Copy, 2007 WL 2725944 (E.D.Tenn.)
**(Cite as: Slip Copy, 2007 WL 2725944)**

**C** Wierbicki v. Advatech, LLC
E.D.Tenn.,2007.
Only the Westlaw citation is currently available.
United States District Court, E.D. Tennessee.
Alex E. WIERBICKI, Plaintiff,
v.
ADVATECH, LLC, URS Corporation, and
Mitsubishi Heavy Industries America, Inc.,
Defendants.
No. 1:06-CV-269.

Sept. 17, 2007.

Valerie W. Epstein, Berke, Berke & Berke,
Chattanooga, TN, for Plaintiff.
Joel T. Galanter, Adams and Reese, LLP, Waverly D.
Crenshaw, Jr., Waller, Lansden, Dortch & Davis,
PLLC, Nashville, TN, for Defendants.

### MEMORANDUM

CURTIS L. COLLIER, United States Chief District
Judge.
**\*1** This case arises from an employment dispute
between plaintiff Alex Wierbicki ("Plaintiff") and his
former employer, whose identity is somewhat
ambiguous based on wording in the complaint.
Before the Court is defendant Mitsubishi Heavy
Industries America, Inc.'s [FN1] ("MHIA") motion to
dismiss and supporting memorandum (Doc. Nos. 7 &
8). This motion requests the Court to dismiss
Plaintiff's retaliatory discharge claim against MHIA.
Plaintiff filed a response in opposition (Doc. No. 12),
and MHIA filed a reply (Doc. No. 15). On August
16, 2007, MHIA filed a memorandum or motion to
dismiss (Doc. No. 16), which addresses Plaintiff's
breach of contract claim against it. Plaintiff filed a
response brief (Doc. No. 17) and MHIA filed a reply
brief (Doc. No. 18).

> FN1. In the memorandum supporting its first
> motion to dismiss, MHIA states it was
> incorrectly identified in Plaintiff's complaint
> as Mitsubishi Heavy Industries American,
> Ltd. (Doc. No. 8). In this Memorandum and
> the accompanying order, the Court will use
> "Inc." in the caption.

For the following reasons, the Court will **GRANT**
MHIA's two motions and will **DISMISS** all
Plaintiff's claims against MHIA.

### I. FACTS & PROCEDURAL HISTORY

On October 31, 2006, Plaintiff filed a complaint in
the Chancery Court for Hamilton County against
defendants Advatech, LLC ("Advatech"), URS
Corporation ("URS") and MHIA (collectively
"Defendants"). Plaintiff alleged claims for retaliatory
discharge in violation of the Tennessee Public
Protection Act ("TPPA"), Tenn.Code Ann. § 50-1-
304,[FN2] and for breach of contract, i.e. breach of his
employment agreement. Plaintiff asserts these claims
against all three Defendants (Doc. No. 1-2,
"Compl.").[FN3] On December 21, 2006, Defendants
removed the complaint to this Court under federal
diversity jurisdiction (Doc. No. 1).

> FN2. Plaintiff passingly mentions that
> Defendants' conduct was "illegal under the
> False Claims Act ("FCA"), 31 U.S.C. §
> 3730."Nowhere else in the complaint or in
> any later filing does Plaintiff attempt to
> make out an FCA claim, which requires
> service on and action by the federal
> Government. It appears Plaintiff was only
> citing the FCA as a way to show
> Defendants' conduct was illegal as required
> by the TPPA, and this Court does not find
> Plaintiff asserts an FCA cause of action.

> FN3. Advatech is a joint venture between
> URS and MHIA (Doc. No. 1-2, ¶ 3).

The complaint alleges that on February 9, 2004
Plaintiff was hired by Advatech as a "Project
Procurement Manager (designated Subcontracts
Lead)" for multiple projects, for a minimum eight-to
ten-year term of employment (Compl.¶ 6). Plaintiff's
job was to prepare, review, evaluate bids, and award
subcontracts to selected subcontractors on Tennessee
Valley Authority ("TVA") projects (id. ¶ 7). TVA
work amounted to a majority of Advatech's business.
Beginning in June 2005, Plaintiff became aware that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2725944 (E.D.Tenn.)
(Cite as: Slip Copy, 2007 WL 2725944)

Page 2

at least one subcontractor had received confidential information which permitted it to unfairly bid on a TVA project. Specifically, Plaintiff alleges that Gary Ferguson, Advatech's Vice President, gave confidential information to a company called Performance Contracting, Inc., (*id.* ¶ 8). Plaintiff labels this practice as "bid rigging." Plaintiff informed Advatech management, the URS Human Resources Department, and URS Divisional Counsel (the Corporate Ethics unit) of the "bid rigging" practices. In-house counsel asked Plaintiff to meet with attorneys from Baker, Donelson, Bearman, Caldwell & Berkowitz, PC in Chattanooga, Tennessee, which Plaintiff did on July 11, 2005 (*id.* ¶ 9). On July 15, 2005, Plaintiff was removed from all TVA jobs. On July 18, 2005, Plaintiff filed a formal complaint with "Defendant's Human Resources Department" (*id.* ¶ 11).[FN4] Plaintiff continued to work at Advatech until he had surgery; to recuperate, he used his vacation and severance pay and was paid through November 4, 2005, when he was apparently fired (*id.*)("Plaintiff was forced to find another job and moved to another state"). Plaintiff alleges his work performance was good, and he was not discharged until he reported what he felt were illegal practices to management (*id.* ¶ 12) (alleging cover-up to keep TVA relationship).

> FN4. It is unclear to which defendant Plaintiff is referring.

*2 In response to Plaintiff's complaint, MHIA filed a motion to dismiss (Doc. No. 7), stating it did not employ Plaintiff and has never employed Plaintiff; therefore, Plaintiff failed to state a claim against MHIA upon which relief could be granted (Doc. No. 8, p. 1).[FN5] MHIA argues that its only connection to this suit is its involvement in Advatech. MHIA also notes Plaintiff failed to plead it was his employer (*id.* at 3). In fact, Plaintiff specifically avers an employment relationship with only one defendant, Advatech, does not claim to have reported wrongdoing to MHIA, and does not allege MHIA discharged him from his position (*id.* at 2). Plaintiff's complaint is somewhat ambiguous as it often generically refers to "Defendants" without defining that term; however, the specific factual averments in the complaint involve Advatech and URS. For example, Plaintiff avers Advatech was his employer (*id.*)(citing Compl. ¶ 6), Advatech engaged in wrongdoing (*id.*)(citing Compl. ¶ 8), Plaintiff

complained about illegal practices to Advatech and URS (*id.*)(citing Compl. ¶¶ 9, 11), and Advatech allegedly discharged Plaintiff to cover up its activities (*id.*)(citing Compl. ¶¶ 11-12).

> FN5. Also pending before the Court is Advatech and URS's motion to stay or in the alternative, motion to dismiss (Doc. No. 9) as well as Plaintiff's motion to stay pending arbitration (Doc. No. 11). The Court will address these motions in a separate order.

Construed in the light most favorable to Plaintiff, the complaint alleges a cause of action for breach of contract against MHIA (Compl.¶ 12) ("Defendants breached their employment agreement with Plaintiff by discharging him early."). In a telephone status conference held July 30, 2007, the Court notified MHIA that its first motion to dismiss did not address this breach of contract claim. MHIA filed a second memorandum of law in support of its motion to dismiss on August 6, 2007 (Doc. No. 16).[FN6] Plaintiff responded in opposition (Doc. No. 17), and MHIA replied (Doc. No. 18).

> FN6. MHIA filed only a memorandum of law. The Court will construe this memorandum as either containing within it a motion to dismiss the breach of contract claim, or as amending MHIA's first motion to dismiss (Doc. No. 7) to address the two causes of action against MHIA (*see id.* at 1).

## II. *STANDARD OF REVIEW*

When reviewing a Fed.R.Civ.P. 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, *Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir.1998)*, accept the complaint's factual allegations as true, *Broyde v. Gotham Tower, Inc., 13 F.3d 994, 996 (6th Cir.1994)*, and determine whether plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (May 21, 2007)* (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson, 355 U.S. 41, 45-46 (1957)*). In deciding a motion to dismiss, the question is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his claims. *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002)*. At the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

same time, bare assertions of legal conclusions are insufficient, and the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988) (emphasis in original).

### III. *DISCUSSION*

### A. THE PARTIES' ARGUMENTS

*3 MHIA's first motion to dismiss argues that Plaintiff's sole claim against it fails to state a claim for relief because it is a parent corporation which cannot be considered Plaintiff's employer, and thus could not be liable under the TPAA for retaliatory discharge (Doc. No. 8, p. 1). MHIA's second memorandum/motion to dismiss reiterates it was never Plaintiff's employer and never entered into any contractual relationship with him which it could breach (Doc. No. 16, p. 1). MHIA stresses it was simply a member in a limited liability company, and this relationship is "legally inadequate" to impute another entity's liability to MHIA (*id.* at 2).[FN7]

> FN7. MHIA points out there is only one contract referenced in the complaint, the letter from URS to Plaintiff stating he would be employed for "eight to ten years" (Doc. No. 16, p. 2-3).

In response, Plaintiff claims Defendants admit Advatech was a "joint venture" between URS and MHIA with URS as managing member (Doc. No. 12, p. 1). However, Plaintiff cites a brief filed by Advatech and URS (Doc. No. 10, p. 1) and not the defendant relevant in this analysis, MHIA. Plaintiff asserts MHIA should be held vicariously liable for the actions of the other members of its "joint venture" (Doc. No. 12, p. 1). To support this point Plaintiff relies on two Tennessee cases, but the facts of these cases are distinguishable.[FN8] Plaintiff also relies on *Prosser & Keeton on the Law of Torts* (5th ed.1984), which analogizes joint ventures to partnerships (*id.* at 1-2). However, at no point does Plaintiff address the employer-employee issue raised by MHIA in its motion to dismiss.

> FN8. Plaintiff relies on *Fain v. O'Connell,* 909 S.W.2d 790 (Tenn.1995), which

involved a suit by a parishioner against a diocese for a slip-and-fall in a church parking lot; the court rejected a rule that barred suit against an unincorporated association by a member of the association. *Id.* at 791-94. *Fain* cites both *Prosser* and *Cole v. Woods,* 548 S. W.2d 640 (Tenn.1977), which Plaintiff also cites. *Cole* involved a question of contributory negligence in an automobile crash; the court held, "the negligence of those engaged in a joint enterprise or joint venture may be imputed to the other members," but the ruling was confined to factually similar cases. *Id.* at 650-51.

MHIA's reply to Plaintiff's response points to the inapplicability of Plaintiff's cited cases as well as Plaintiff's failure to address the employer-employee status issue (Doc. No. 15, p. 3). MHIA argues that it and URS are only legally related by their joint formation of Advatech, a limited liability company ("LLC") (*id.* at 2). While URS may act in some employment capacity to Advatech, MHIA does not (*id.* at 1-2). MHIA avers it cannot be found liable because the existence of an employment relationship is a required element for a TPPA claim; MHIA also refutes Plaintiff's contention it and URS could be considered "general partners" and therefore vicariously liable for each other's actions. MHIA emphasizes, by forming an LLC, it is shielded from the type of liability Plaintiff is attempted to impute to it. MHIA argues this point even more strongly in its second memorandum/motion to dismiss, in which it points out:

Advatech, LLC is a Delaware limited liability company, governed by the Delaware Limited Liability Company Act. Under the Act, "the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company." Del.Code Ann. tit. 6, § 18-303(a). As a member in an LLC, MHIA is not legally responsible for the liabilities of Advatech, LLC. This Court has recognized

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

previously that Delaware law prevents a plaintiff from pursuing a breach of contract claim against a member of an LLC when the contract is between the LLC and the plaintiff, absent exceptional circumstances that have not been alleged in this case. *Swift Freedom Aviation, LLC v. R.H. Aero,* 2005 WL 2246256, *7 (E.D.Tenn. Sept. 13, 2005).

**\*4** (Doc. No. 16, p. 3-4). In response to this motion, Plaintiff submits evidence of an employment contract with "the defendants," without precisely identifying *which* defendant or addressing MHIA's contention regarding limited liability (Doc. No. 17, p. 1-3). MHIA emphasizes this "inexplicable avoidance" in its reply brief,[FN9] and also points out the job offer letter, written to Plaintiff on behalf of URS, specifically describes the employment relationship as "at will" (Doc. No. 18, p. 1) (citing Doc. No. 10[-2] ).

> FN9. Doc. No. 16, p. 2 (docket citations omitted):
>
> Plaintiff alleges no privity of contract with MHIA. Plaintiff does not allege that he had an employment contract with MHIA. In the Complaint, he alleges that he was employed by Advatech, and in his Response, he alleges an oral contract based on his conversations with Marvin Fisher and other agents or employees of URS or Advatech. This wholly undercuts his breach of contract claim against MHIA. It is well established under Tennessee law that "[p]rivity of contract is an essential element to an action founded on a breach of contract...."*Tipton v. Sparta Water Co.,* 57 S.W.2d 793, 795 (Tenn.1933). All of Plaintiff's allegations about the formation of an employment contract, whether written or oral, involve URS and Advatech, not MHIA. Plaintiff fails to establish or even allege privity of contract with MHIA.

## B.    LIABILITY    FOR    RETALIATORY DISCHARGE UNDER THE TPPA

The first issue is whether MHIA can be held liable as Plaintiff's employer under the TPPA. Tenn.Code Ann. § 50-1-304(a), provides: "No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities."This Court has recognized the following four essential elements to make out a TPPA claim:

(1) the plaintiff must be the defendant's employee;

(2) the plaintiff must refuse to participate in or to remain silent about illegal activities;

(3) the defendant-employer must discharge the plaintiff-employee; and

(4) an "exclusive causal relationship" must exist between the plaintiff's refusal to participate in or remain silent about illegal activities and the defendant's termination of the plaintiff-employee.

*Griggs v. Coca-Cola Employees' Credit Union,* 909 F.Supp. 1066, 1069 (E.D.Tenn.1995).

Here, MHIA specifically challenges the first element, and Plaintiff has provided no evidence to support this Court finding an employment relationship between him and MHIA. The offer letter (Doc. No. 10-2) is clearly between URS and Plaintiff; MHIA avers the employment discussions to which Plaintiff refers were all with URS or Advatech employees and Plaintiff has not refuted this contention. The one way Plaintiff could demonstrate MHIA's liability would be to prove it was responsible or vicariously liable for Advatech or URS' conduct; as MHIA points out, Plaintiff has failed to provide credible evidence that "Advatech, LLC" is *not* a limited liability company offering liability protection to its members but is instead a "joint venture" or partnership. Under Delaware law, as MHIA cites, the members of LLCs are not responsible for the debts and obligations of the LLC itself. Del.Code Ann. tit. 6, § 18-303(a). The same is true in Tennessee. *See*Tenn.Code Ann. § 48-217-101(1) ( "a member, holder of financial interest, governor, manager, employee or other agent of an LLC does not have any personal obligation and is not otherwise personally liable for the acts, debts, liabilities, or obligations of the LLC whether such arise in contract, tort or otherwise."); *see also Causey v. Lachmandes,* No. 3:04-0797, 2005 WL 2000625 at *5 (M.D.Tenn. Aug. 18, 2005) (construing § 48-217-101, noting "one exception exists where the member, holder, or agent is personally liable 'by reason of such person's own acts or conduct,' " and finding the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 2725944 (E.D.Tenn.)

**(Cite as: Slip Copy, 2007 WL 2725944)**

Page 5

members of an LLC were not liable for the shooting of a guest at a hotel the LLC owned).

**\*5** Accordingly, this Court finds no employment relationship existed and will **GRANT** MHIA's first motion to dismiss (Doc. No. 7) as to this claim.

## C. BREACH OF CONTRACT

In the same vein, in order to be liable for breach of an employment contract, MHIA would have to have been Plaintiff's employer. As this Court has already found, Plaintiff failed to allege an employment relationship with MHIA. MHIA is explicitly mentioned in the complaint only twice. First, Plaintiff alleges Advatech is a "joint venture between Mitsubishi Heavy Industries, Ltd. and URS Corporation" (Compl., ¶ 3). Second, Plaintiff alleges "Mitsubishi Heavy Industries America, Ltd. is a corporation operating under the laws of the State of Tennessee and actively engaged in business in the State of Tennessee"(*id.* ¶ 4). Even after MHIA has again and again argued that Plaintiff is not an MHIA employee, Plaintiff has again and again failed to make such assertion. In his response to MHIA's first motion to dismiss, Plaintiff simply argues MHIA is vicarously liable for the acts of URS and Advatech. In response to MHIA's second memorandum/ motion to dismiss, Plaintiff offers evidence of an oral employment contract, but does not specifically name MHIA as his employer. The holes in Plaintiff's arguments further illustrate that MHIA's only link to this case is in its status as a member company of Advatech.

Accordingly, even viewed in the light most favorable to Plaintiff, Plaintiff has failed to show any specific "employment contract" with MHIA, and the Court must **DISMISS** Plaintiff's breach of contract claim against MHIA.

## IV. *CONCLUSION*

For the foregoing reasons, the Court will **GRANT** both MHIA's motion to dismiss the TPPA claim (Doc. No. 7) and MHIA's putative second motion to dismiss the breach of contract claim (Doc. No. 16). In sum, all Plaintiff's claims against defendant Mitsubishi Heavy Industries America, Inc. will be **DISMISSED WITH PREJUDICE.**

An Order will enter.

E.D.Tenn.,2007.

Wierbicki v. Advatech, LLC

Slip Copy, 2007 WL 2725944 (E.D.Tenn.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

Westlaw.

Not Reported in S.E.2d                                                                              Page 1
Not Reported in S.E.2d, 59 Va. Cir. 244, 2002 WL 31989105 (Va. Cir. Ct.)
**(Cite as: Not Reported in S.E.2d, 2002 WL 31989105)**

**C** Wright v. St. Charles Water Auth.
Va.Cir.Ct.,2002.

Circuit Court of Virginia, Lee County.
Terry WRIGHT
v.
ST. CHARLES WATER AUTHORITY, et al
**No. 0102-032.**

July 11, 2002.

Dear Counsel:
QUILLEN, J.
**\*1** This matter before the court involves complainant, Terry Wright, who brings forth three causes of action that are all related to the same set of facts and occurrences. The complainant alleges 1) wrongful termination due to a disability, 2) breach of implied covenant of good faith and fair dealing, 3) defamation. The defendants bring forth a demurrer to dismiss all causes of action. The most salient reason for the demurrer is the complainant failed to state a cause of action and provide written notice as required by the Virginians with Disabilities Act.

First Cause of Action

The complainant alleges he was terminated from his employment with the Town of St. Charles and with the St. Charles Water Authority solely because of his disabilities, which include <u>diabetes</u>, high blood pressure, and a "nervous condition." According to the complainant's pleaded allegations, citing the Virginians with Disabilities Act, Virginia Code § 51.5-1 through -52, the Town Manager of St. Charles asked Mr. Wright to take a leave of absence from work on June 9, 2000, because the Town Manager believed the complainant had a drug problem. Complainant contends that any "drug problem" emerges from the medication he must take for his disabilities. Upon the advice of his doctor, the complainant subsequently took a two-week sick leave from work. After immediately returning to work, the complainant was informed that he was being laid off. Thus, on or about June 23, 2000, the complainant was suspended from work. On or about February 15, 2001, complainant's counsel mailed the Bill of

Complaint and served the defendants. On or about February 20, 2001, the defendants received notice of this pending suit approximately 237 days after his discharge.

The Court finds that the Virginians with Disabilities Act (VDA) is the exclusive state remedy for employment discrimination, thus there is no common law wrongful discharge claim. See *Mannell v. American Tobacco Co.*, 871 F.Supp. 854 (E.D.Va.1994). The complainant is "required to pursue any state law claim of disability discrimination under the VDA".*Id.*

As in the VDA, the Virginia Human Rights Act (VHRA) limits the causes of action to only those afforded in the Act, and bars any claim for wrongful termination in violation of the public policy embodied in either the VDA or the VHRA. Thus, since the VDA contains an exclusivity provision, a disability discrimination action must be pursued under the VDA. *Stafford v. Radford Community Hosp.*, 908 F.Supp. 1369 (W.D.Va.1995), aff'd, 120 F.3d 262 (4th Cir.). All relief sought must be found in the remedies listed in section 51.5-46 of the VDA. Punitive or exemplary damages shall not be awarded; compensatory damages and reasonable attorney fees may be awarded. *Id.* It is noted that actions brought under the VHRA must adhere to the same 180-day written notice requirement. See Virginia Code § 2.2-2639.

The Virginians With Disabilities Act § 51.5-46 provides that any action brought against the employer shall be brought within one year after the occurrence of any violations under said act and that the potential defendant must receive written notice of the claim within 180 days from the date of the alleged violation. Based upon the complainant's allegations, valid notice was not given pursuant to § 51.1-46 of the Code of Virginia, and accordingly the complainant's first cause of action (wrongful termination) is dismissed with leave to amend if the complainant can prove notice was given within the required 180-day time limit.

Second Cause of Action

Not Reported in S.E.2d
Not Reported in S.E.2d, 59 Va. Cir. 244, 2002 WL 31989105 (Va. Cir. Ct.)
(Cite as: Not Reported in S.E.2d, 2002 WL 31989105)

Page 2

**\*2** The complainant's second cause of action (breach of implied covenant of good faith and fair dealing) is dismissed. A covenant of good faith and fair dealing will not be implied as a part of an at-will employment contract where the employer as well as the employee are at liberty to terminate the contract.*Schryer v. VBR,* 25 Va. Cir. 464 (1991). Virginia does not recognize an independent claim for breach of an implied covenant of good faith and fair dealing in an at-will employment contract. *Derthick v. Bassett-Walker, Inc.* 904 F.Supp. 510 (W.D.Va.1995).

### Third Cause of Action

The complainant's final cause of action is a defamation claim. Complainant contends that the defendants knowingly made false statements that he had a drug problem and that he was spending the Authority's money on drugs. "Defamatory words which are actionable *per se* are those which (1) impute commission of a criminal offense involving moral turpitude, (2) impute infection with some contagious disease, (3) impute unfitness to perform the duties of an office or employment, or want of integrity in the discharge of such duties, or (4) prejudice a person in his profession or trade."*Fleming v. Moore,* 221 Va. 884 889 (1981). Furthermore, for common law defamation the complainant must precisely state the language he claims to be defamatory and identify the speaker of said language. *Federal Land Bank v. Birchfield,* 173 Va. 200 (1939).

Finally, to be defamatory, the words must be communicated to a third party.*Balderson v. McNamara,* 49 Va. Cir. 254 (1999). For the purpose of ruling on the demurrer, the Court must accept the complainant's pleadings, and finds that the pleadings are sufficient. The defamation claim was pled with adequate specificity, was communicated to a third party, and the defamatory words may be actionable. Hence, complainant can proceed solely on his third cause of action (Defamation). Consequentially, defendant's demurrer is denied regarding the complainant's defamation claim and is sustained in regard to Causes 1 and 2.

Counsel for the defendants is directed to prepare an Order encompassing the Court's decision and circulate to complainant's counsel and to the Court.

Va.Cir.Ct.,2002.
Wright v. St. Charles Water Auth.
Not Reported in S.E.2d, 59 Va. Cir. 244, 2002 WL 31989105 (Va. Cir. Ct.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

Westlaw.

Not Reported in S.E.2d                                                          Page 1
Not Reported in S.E.2d, 32 Va. Cir. 300, 1993 WL 946387 (Va. Cir. Ct.)
**(Cite as: Not Reported in S.E.2d, 1993 WL 946387)**

**H**Spiller v. James River Corporation
Va.Cir.Ct. 1993.

Circuit Court of Virginia, City of Richmond.
Spiller
v.
James River Corporation
**CASE NO. LW-2216-3.**

December 23, 1993.

**\*1** This case is before the court on demurrer and
defendant's Motion Craving Oyer.
T. J. Markow, Judge.
Plaintiff, Warren Spiller, brought this action against
his former employer, James River Corporation,
claiming that James River breached his employment
contract by discharging him from his position as
James River's Corporate Controller without cause.
The Motion for Judgment contains claims for relief
based on breach of employment contract (Count I)',
breach of a covenant of good faith and fair dealing
(Count II), and promissory estoppel (Count III).
During argument, Spiller's counsel advised the court
that Spiller's claim for mental and emotional distress
was withdrawn.

James River hired Spiller in 1977 as a full-time
salaried employee. Spiller later became James River's
Corporate Controller, the position he held when
James River terminated his employment in
November, 1992. Spiller claims he had an
employment agreement with James River which
provided that he could only be terminated for cause
and that James River would treat him with the
"[h]ighest standards of integrity, ethics, and
fairness."Spiller makes no claim of any formal
written contract between the parties. He claims,
however, that statements in four documents issued by
James River and distributed to Spiller during his
employment comprise an employment contract which
limited James River's right to terminate his
employment for cause only. Defendant craves oyer of
all four documents, plus one other similar document,
all of which are necessary for full review of plaintiff's
claims and all of which the court considers.

The first document Spiller relies on is entitled,
"James River Corporation: Strategy Statement,"
which was distributed by James River in 1984 ("1984
Strategy Statement"). The document discusses James
River's corporate and financial goals, fundamental
values and beliefs, and general business plans. To
support his claim, Spiller singles out two statements
contained in the section entitled "Fundamental
Values/Beliefs." First, the statement under heading of
"Jobs First" that: "The Corporation can make the
most effective social contribution by creating and
maintaining secure, safe and productive
jobs."Secondly, the statement under the heading
"Ethics": "Highest standards of integrity, ethics, and
fairness must override in all transactions and
relationships."

The second document upon which Spiller relies was
issued by James River in 1988, and is entitled
"Corporate Vision, Values & Beliefs and Strategy --
Interpretive Papers" ("1988 Strategy Statement").
Like its predecessor, this document discusses James
River's corporate and financial goals, and
fundamental values and beliefs. Spiller relies on the
following statement contained under the caption
"Desired State of Employee Relations": "Termination
is only for clearly defined cause and, except where
clearly inappropriate, only after all other remedial
measures have been taken. Termination is subject to
an internal review process."

**\*2** The third document upon which Spiller relies was
issued by James River in January, 1990, and is
entitled "James River Corporation: Vision, Values &
Strategy Statement" ("1990 Strategy Statement"). The
document discusses the same subjects as the
preceding Strategy Statements. Spiller relies upon
two statements. First, a statement contained under the
caption "Ethics": "James River is committed to fair
treatment for all employees." Secondly, a statement
that "These beliefs underlie the following Employee
Relations goals: Employees feel secure in their jobs
and recognize that the key to long-term job security is
on-going business competitiveness.""

The fourth document Spiller relies on is a handbook
entitled "James River Corporation: Benefits and
Policies for Salaried Employees" ("Benefits Book"),

Not Reported in S.E.2d                                                                                                    Page 2
Not Reported in S.E.2d, 32 Va. Cir. 300, 1993 WL 946387 (Va. Cir. Ct.)
(Cite as: Not Reported in S.E.2d, 1993 WL 946387)

which James River issued to employees in January, 1991. The Benefits Book contains information of various James River employee benefits, such as health care, insurance, retirement, profit sharing and stock purchase plans. The portion of the document that Spiller relies upon involves a discussion of James River's salary continuation benefits provided to non-union salaried employees who are terminated from employment or placed in "inactive" status. Spiller asserts that the Benefits Book addresses severance benefits payable to a terminated employee in the context of only three circumstances: termination for misconduct, inability to perform, and job elimination. Spiller argues that because the Benefits Book addresses termination resulting from these three circumstances, they constitute the only grounds upon which a salaried James River employee may be terminated involuntarily.

James River demurs on the grounds that Spiller was an employee at will and that the documents that Spiller contends constitute his employment contract neither contain binding promises nor meet the contractual requirements for an offer. In support of its demurrer, James River craves oyer of all documents Spiller relies upon in support of the Motion for Judgment. In addition, James River craves oyer of a fifth document entitled "James River Corporation: Values, Beliefs & Strategy," which document James River issued to its employees, including Spiller, during the term of his employment. Like its predecessors, this document discusses corporate values and beliefs, but it also contains a disclaimer that "[a]s in prior James River publications on principles, values and beliefs, this statement is an expression of goals and aspirations and does not create a contract of contractual obligation of benefit by James River, not does it limit in any way James River's rights as an employer."The court sustains James River's Motion Craving Oyer on the ground that all five documents form the basis of and govern Spiller's claims.

**\*3** In order to recover, Spiller must establish that the provisions contained in the documents tendered to the court constitute the enforceable terms of that contract. Spiller concedes that no formal written employment contract was ever executed between the parties. Spiller contends, however, that the various statements contained in the Strategy Statements and Benefits Book constitute an enforceable contract of employment. James River counters that the statements in the documents fail to express the certainty or specificity necessary for a binding offer of a contract.

Virginia follows the common law employment at-will doctrine. See e.g., Conrad v. Ellison-Harvey Co., 120 Va. 458, 466, 91 S.E. 763 (1917). Under this doctrine, an employer may discharge an employee at any time for any reason or for no reason at all without incurring liability for wrongful discharge.Hoffman Specialty Co. v. Pelouze, 158 Va. 586, 164 S.E. 397 (1932). A general hiring where the term of employment is not specified is presumed to be terminable at-will. Id. This presumption, however, may be rebutted. Sea-Land Service Inc. v. O'Neal, 224 Va. 343, 297 S.E.2d 647 (1982). To overcome the presumption of at-will employment, an employee must come forward with evidence of employment for a definite term. Progress Printing Company, Inc. v. Nichols, 244 Va. 337, 340, 421 S.E.2d 428, 429 (1992).

Although Virginia's Supreme Court has not specifically addressed the precise question of whether provisions contained in employee handbooks or other company policy documents distributed to employees can become enforceable terms of an employment agreement, it is clear that it would do so in an appropriate case. The Court did consider the contents of a personnel manual utilized by the employer in Miller v. SEVAMP, Inc., 234 Va. 462, 362 S.E.2d 915 (1987). The SEVAMP manual stated that it was the employer's policy to retain conscientious and loyal workers, but also stated that an employee could be "dismissed at the discretion of the Executive Director."Id. at 464, 362 S.E.2d at 916. This latter provision was found by the Court to be a clear expression of the employer's intent to create an at-will relationship and was a significant factor in its decision to affirm the trial court's dismissal of the employee's wrongful termination claims. Id. at 467, 362 S.E.2d at 918. In addition, Virginia's Supreme Court has held that a memorandum distributed by the employer to employees promising severance pay constituted an offer which the employee accepted by the employee's continued employment. Hercules Powder Co. v. Brookfield, 189 Va. 531, 53 S.E. 2d 804 (1949). More recently, the Virginia Supreme Court addressed the enforceability of a statement contained in an employee handbook in Progress

Not Reported in S.E.2d
Not Reported in S.E.2d, 32 Va. Cir. 300, 1993 WL 946387 (Va. Cir. Ct.)
**(Cite as: Not Reported in S.E.2d, 1993 WL 946387)**

Printing, supra. There, the employee sought to overcome the employer's claim of at-will employment by reference to the company's employee handbook, which stated that the company would not discharge or suspend an employee "without just cause." Id. at 339,421 E.E. 2d at 429. Although the Court ultimately ruled that this provision had been superseded by a subsequent at-will acknowledgement form signed by the employee, it clearly did not reject the employee's use of the handbook to overcome the at-will presumption. In fact, the Court stated that "a termination for cause provision used to overcome the presumption of employment at will must be in an employee manual or other document which complies with the statute of frauds."Id. at 341, 421 S.E.2d at 430. Finally, Virginia federal district courts applying and interpreting Virginia law have held that statements contained in employee handbooks may be used by the employee to rebut the presumption of at-will employment. See Thompson v. American Motor Inns, Inc., 623 F.Supp. 409 (W.D. Va. 1985) (employee could demonstrate that employee handbook constituted an offer of benefits in exchange for continued labor and that assent is evidenced by the employee's reading and understanding the handbook, and working in accordance with its terms); Barger v. General Electric Co., 599 F.Supp. 1154 (W.D. Va. 1984); Frazier v. Colonial Williamsburg Foundation, 574 F.Supp 318 (E.D. Va. 1983).

**\*4** In addition, Virginia's Supreme Court has clearly recognized the traditional elements of contract formation. Before a contract can be formed, there must be an offer and an acceptance. See e.g., Dulany Foods, Inc. v. C.M. Ayers, 220 Va. 502, 513, 260 S.E.2d 196 (1979). The concept of a unilateral contract, where one party makes a promissory offer, and the other accepts by performing an act has also been recognized. See e.g., Richmond Engineering & Mfg. Corp. v. Loth, 135 Va. 110, 115 S.E. 774 (1923). Applying this approach to the instant case, an employer's manual that contained a definite promise by the employer not to discharge employees except for cause could be treated as an offer of a unilateral contract by the employer that if accepted by the employee's continued performance would modify the employment at will relationship. See e.g., Hercules Powder Co., supra.

Courts in other jurisdictions faced with claims similar to that in the instant case in which employees contend

that an employee handbook or policy statement created enforceable contractual rights have applied traditional requirements for contract formation. See e.g., Pine River State Bank v. Mettille, 333 N.W.2d 622 (Minn. 1983). Under this approach, the requisites for contract formation, offer, acceptance, and consideration are necessary predicates to establishing that policies in the documents are part of Spiller's employment contract. To create enforceable contractual rights, the documents must contain language that a reasonable employee would construe as an offer. See e.g., Duldulao v. Saint Mary of Nazareth Hosp. Ctr., 505 N.E.2d 314 (1987) (holding that "an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present.") This is consistent with Virginia contract law requiring that promises, to be enforceable, meet a certain degree of definiteness. See e.g., Chang v. First Colonial Savings Bank, 242 Va. 388, 391, 410 S.E.2d 928 (1991) ("[w]here the offer is clear, definite, and explicit, and leaves nothing open for negotiation, it constitutes an offer, acceptance of which will complete the contract.") (citations omitted). Applying this precept of standard contract law, courts in other jurisdictions have held that general policy statements, such as "employees who work for this company can expect a high degree of job security," are not sufficiently specific to constitute a legally binding offer. Pine River State Bank v. Mettille. See also, Fournier v. U.S. Fidelity & Guar. Co., 569 A.2d 1299, 1302,cert. denied, 573 A.2d 1337 (1990) (following language in handbook did not alter at-will status of plaintiff's employment: "It is our firm belief that your skills, work experience, education, and potential will enable you to contribute success of USF&G. We equally believe that we as a Company can provide you with the opportunity for both professional and career advancement"); Thompson v. St. Regis Paper Co., 685 P.2d 1081 (Wash. 1984) (en banc) (language in employer's Policy and Procedure Guide that terminations would be made in a "fair, reasonable, and just" manner was insufficient to create an implied obligation to discharge only for cause); Patrowich v. Chemical Bank, 470 N.Y.S.2d 599,aff'd483 N.Y.S.2d 659 (1984) (court noted that manual contained only general policy statements and supervisory guidelines. It made no reference to any precise term of employment, nor did it require good cause for discharge). In addition, vague or nonspecific job security language contained in employee manuals has been held insufficient to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.E.2d                                                      Page 4
Not Reported in S.E.2d, 32 Va. Cir. 300, 1993 WL 946387 (Va. Cir. Ct.)
(Cite as: Not Reported in S.E.2d, 1993 WL 946387)

overcome the presumption that the contract is terminable at-will. See e.g., Lofton v. Wyeth Labs., Inc., 643 F. Supp. 170 (E.D. Pa. 1986) (plaintiff alleged that his termination breached the employment contract established by employment manual. The manual states that the employer would treat employees fairly, encourage employees to talk with supervisors about problems, and allow employees to take decisions to upper levels of management for review. District court noted that the manual did not include a provision guaranteeing employees just cause dismissal, and thus did not change plaintiff's at-will employment status).

*5 Inasmuch as Spiller is relying exclusively on the language contained in the James River documents in his attempt to establish the existence of a contract containing termination only for cause, the resolution of whether the language used rises to the level of a contract is one of law for the court to decide. See e.g., Meade v. Wallen, 226 Va. 465, 311 S.E.2d 103 (1984).

The dispositive issue is whether James River, speaking through the Strategy Statements and Benefits Book, made a definite and specific offer to Spiller not to discharge him except for good cause. A careful examination of the Strategy Statements and Benefits Book reveals that they do not contain any statements that are sufficiently definite to create a binding offer that employees would be terminated only for cause.

The statements on which Spiller relies in the Strategy Statements pertaining to job security and fairness are not binding promises. As noted above, these documents address a host of corporate issues, such as James River's corporate objectives, values and beliefs, and business and financial plans. The few statements dealing with job security are not definite offers, but rather were made in the context of James River's "vision of the future" and "desired state" of employee relations. Such precatory language, expressing James River's expectations and hopes for employment relationships falls short of an expression of an offer of a unilateral contract of employment which could be terminated only for cause. For example, the statements in the 1984 Strategy Statement's discussion of James River's "Jobs First" philosophy ("to create and maintain secure, safe and productive jobs,") and its ethical standards ("Highest

standards of integrity, ethics, and fairness must override in all transactions and relationships") do not possess the definiteness and specificity required to constitute a promise that employees will be terminated only for cause. Similarly, the 1988 Strategy Statement speaks of job security in the context of a "desired state" which represents James River's "vision of the future." This language of future, desired state of employee relations does not satisfy the requirements of an offer. In addition, the 1990 Strategy Statement defines job security only in terms of "goals" and "objectives" to be achieved at some uncertain future date. Such statements do not express the certainty or the specificity required for a binding offer of a contract to exist. Finally, the 1992 Strategy Statement contains no statements that even address the issue of employment termination.

In regard to the Benefits Book, Spiller argues that the reference to three grounds upon which a salaried employee may be terminated involuntarily constitute a promise by James River that these are the exclusive grounds of involuntary termination. It is true that the Benefits Book discusses the severance benefits payable to a terminated employee only in the context of termination for misconduct, inability to perform the job, and job elimination. The question is whether this failure to address the severance benefits payable to an employee who is terminated without cause amounts to an implied promise that employees will be terminated only for cause. The language at issue is non-promissory, but merely a declaration of the severance benefits available upon termination on the specific grounds. The Benefits Book neither promises employees that they will only be terminated for cause, nor in any way limits James River's ability to dismiss employees. The Benefits Book simply sets forth criteria for obtaining benefits. The fact that the Benefits Book does not specifically address the severance benefits available when an employee is terminated without cause is insufficient as a matter of law to form the basis of an enforceable agreement that Spiller could be terminated only for cause.

*6 Because the documents do not contain, expressly or by clear implication, any representations that either limits James River's legal right to terminate Spiller's employment or specifies a definite duration of Spiller's employment services, the demurrer to Count I is sustained.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.E.2d, 32 Va. Cir. 300, 1993 WL 946387 (Va. Cir. Ct.)
**(Cite as: Not Reported in S.E.2d, 1993 WL 946387)**

In Count II of the Motion for Judgment, Spiller asserts that his employment contract with James River contained a covenant of good faith and fair dealing, and that this covenant was breached by the termination of his employment. Spiller argues that his contract contains such a covenant because James River's Strategy Statements state that the company strives to abide by the "[h]ighest standards of integrity, ethics and fairness...in all transactions or relationships."

Virginia law does not recognize a claim for breach of a covenant of good faith and fair dealing. Virginia Circuit courts that have considered such claims have consistently rejected them. For example, in Burton v. Central Fidelity Bank, (24th Cir. Ct. October 28, 1988), Judge Sweeney held that the court could find "no authority to support this theory [covenant of good faith] in employment contract action in the State. It is not consistent with the termination at-will presumption and contradicts the mutuality concept."Accordingly, the demurrer to Count II is sustained.

In Count III of the Motion for Judgment, Spiller claims that James River is estopped from denying the existence of a contract. Spiller's promissory estoppel claim is based upon the same language in the documents relied upon in his breach of contract claim. Spiller claims that these documents made a representation to him that his employment would not be terminated without just cause, he was nevertheless terminated without just cause, and as a result he suffered a detriment of not being able to pursue other employment.

Spiller's promissory estoppel claim is based upon the same language as his breach of contract claim. This court has ruled that the documents did not create a just cause termination contract. For the same reasons, the documents do not constitute a promise of non-termination except for cause upon which Spiller could have reasonably relied. Accordingly, the demurrer as to Count III is sustained.

For the foregoing reasons, the demurrer is sustained. A copy of an order implementing the court's decision is enclosed.

Va.Cir.Ct. 1993.
Spiller v. James River Corp.

Not Reported in S.E.2d, 32 Va. Cir. 300, 1993 WL 946387 (Va. Cir. Ct.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F



**C**Schryer v. VBR
Va.Cir.Ct. 1991.

Circuit Court of Virginia, Fairfax County.
Schryer
v.
VBR
**AT LAW NO. 101692.**

November 13, 1991.

**\*1** The matter before the Court is defendant VBR's Demurrer to plaintiff Ronald D. Shryer's Second Amended Motion for Judgment. The Second Amended Motion for Judgment alleges five causes of action against the defendant which arise from the defendant's termination of the plaintiff's employment. Rosemarie Annunziata, Judge.

The defendant in this case is a business with operations in the United States and overseas, including Turkey. On August 29, 1988, the defendant hired the plaintiff to work in Turkey as its Manager of Industrial Relations, and the parties entered into a written employment agreement. The employment agreement does not specify the duration of employment. Section 12 of the agreement states in part:

This agreement may be terminated and the employment of the Employee thereunder may be terminated by the Company in the following circumstances:

\* \* \*

Termination at will for convenience of the Company requires a 60 day written notice and the Company has the option to pay up to two months salary in lieu of notice.

The plaintiff alleges that the Director of Personnel and the Vice President of Human Resources for defendant VBR orally advised him in response to his request for a clarification of the contract terms that the employment agreement was for a term of five years, and that the language "for convenience" in Section 12 applied exclusively to terminations which

occurred as part of a reduction in force.

However, section 27 of the employment agreement states, in pertinent part:

The employee further acknowledges that no employer or agent of the employer has any authority to make any promises, representations or statements concerning the employee's employment or any of the terms of conditions relating thereto other than those contained in this written agreement. The employee certifies and acknowledges that no such promises, representations and/or statements have in fact been made and that he/she is entering into this Agreement based solely on promises, duties, and obligations of the Employer contained in this written agreement, which constitutes the entire written agreement between the parties. It is specifically agreed by the parties hereto that this agreement shall be subject to modification only in writing signed by both the Employer and the Employee.

On December 19, 1989, the defendant notified the plaintiff of his termination, effective February 17, 1990, sixty days later. Plaintiff alleges that he was not fired in connection with a reduction in force, but rather was discharged in retaliation for complaining about the defendant's illegal practice of discrimination against employees with dependents. Plaintiff's Second Amended Motion for Judgment asserts five causes of action against the defendant which include: 1) breach of contract; 2) promissory estoppel; 3) breach of implied covenant of good faith and fair dealing; 4) wrongful discharge; and 5) constructive fraud. The defendant filed a Demurrer to these causes of action, and for the reasons stated below, the defendant's Demurrer is sustained with respect to each cause of action.

**\*2** Count I of the plaintiff's Second Amended Motion for Judgment alleges that the defendant's termination of the plaintiff constitutes a breach of the plaintiff's employment contract. The defendant demurred to this claim arguing that it properly exercised its right under the contract to terminate the employment relationship at its convenience. I find that the employment agreement does not specify a term of employment, and that under the agreement's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.E.2d                                                                    Page 2
Not Reported in S.E.2d, 25 Va. Cir. 464, 1991 WL 835295 (Va. Cir. Ct.)
**(Cite as: Not Reported in S.E.2d, 1991 WL 835295)**

provisions the plaintiff as well as the defendant employer were at liberty to terminate the contract at will. See <u>Miller v. Sevamp, Inc., 234 Va. 462 (1987)</u>.

The terms of the agreement are clear and unambiguous, admitting of no parol evidence to vary its terms. <u>Amos v. Coffey, 228 Va. 88 (1984)</u>. Thus, the alleged representations of the Director of Personnel and the Vice President of Human Resources for defendant VBR are outside the four corners of the parties' contract and cannot be considered. The agreement expressly provides that the employment of the plaintiff may be terminated at will for the convenience of the Company after 60 days written notice to the plaintiff. The pleadings state that the defendant gave plaintiff the required 60 days notice before terminating him. Accordingly, the defendant properly exercised its right under the employment contract to terminate the plaintiff at will, and the defendant's demurrer to the plaintiff's claim for breach of contract must be sustained.

Count II (Promissory Estoppel) of the plaintiff's Second Amended Motion for Judgment alleges that the plaintiff relied to his detriment upon assurances made to him by agents of the defendant, as does Count V (Constructive Fraud). The plaintiff alleges that agents of the defendant assured him that his term of employment would be for five years and that the language in the employment agreement stating that he could be terminated "for convenience" would apply only to a reduction in force. The defendant demurred to this Count arguing that, even assuming such assurances were made, the plaintiff could not justifiably rely on them.

As noted earlier, by the express terms of the employment agreement, the plaintiff acknowledged that agents of the employer had no authority to make any such statements or representations and that he was entering the agreement solely on the basis of the written agreement. Even assuming for purposes of the issue that any representations made by the employer's agents are not precluded by the parol evidence rule, I find that plaintiff's reliance on such representations to be unreasonable in light of the other facts alleged. Section 27 of the employment agreement clearly puts the plaintiff on notice that he could not rely on any representations or statements concerning the terms or conditions of his employment which were not contained in the written

agreement.

In light of section 27, both Count II based on promissory estoppel and Count V based on constructive fraud must fail. The party claiming reliance must be ignorant of the true state of facts, and the means of acquiring the facts must be unavailable to him. <u>Boykins Narrow Fabric Corp. v. Weldon Roofing & Sheet Metal, Inc., 221 Va. 81, 86-87 (1980)</u>. The plaintiff's reliance on the allegedly fraudulent representations must be reasonable. <u>Cautley v. Morgan, 41 S.E. 201 (1902)</u>. Here, the terms of the contract were equally known to all parties. Consequently, plaintiff's reliance on any representations made by the employer's agents was unreasonable, and the defendant's demurrer to Count II and Count V must be sustained.

**\*3** Count III of the plaintiff's Second Amended Motion for Judgment alleges that the defendant's termination of the plaintiff constitutes a violation of an implied-in-law covenant of good faith and fair dealing. The defendant demurred to this Count arguing that Virginia law does not recognize a cause of action for wrongful discharge based on an implied covenant in good faith and fair dealing.

I find no authority in Virginia for implying a covenant of good faith and fair dealing to an at will employment contract. See <u>Mason v. Richmond Motor Co., 625 F. Supp. 883, 889-90 (E.D. Va. 1986)</u>; see also <u>Costantino v. Jaycor, 816 F.2d 671 (4th Cir. 1987)</u> (unpublished) (text in Westlaw). Even assuming that Virginia law would imply a covenant of good faith and fair dealing in employment contracts, in light of the Virginia Supreme Court's adherence to the employment at will doctrine and its narrowly defined public policy exception, I am of the opinion that such an implied covenant's application to employment contracts would be limited to contracts for a fixed term, or to those instances where clear public policy is violated by the discharge. See generally Perritt, Employee Dismissal Law and Practice, ' 4.11, ' 4.23 (2d ed. 1987) (substantial differences exist in applying the covenant of good faith and fair dealing to employment termination cases, and courts have shown resistance to the implied covenant doctrine in such cases because of its far-reaching effect on other established exceptions to the employment at will doctrine); See, e.g., <u>Vallone v. Agip Petroleum Co., 705 S.W.2d 757, 759</u>

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(Tex. Ct. App. 1986) (good faith obligation may be implied in contracts for a fixed term, but not in contracts for an indefinite term); Brockmeyer v. Dun & Bradstreet, Inc., 335 N.W.2d 834, 840-41 (Wis. 1983) (no breach of implied covenant unless clear public policy violated by discharge).

The plaintiff cites law for the proposition that every contract in Virginia contains an implied covenant of good faith and fair dealing, and states that this Court implied such a covenant in an employment contract in Keiler v. Valley Proteins, Inc., At Law No. 88858 (Fairfax Co. Cir. Ct.) (Ltr. op., June 15, 1989). However, in Keiler the court distinguished between employment contracts for a specific term of years and at will employment contracts. While the court allowed a cause of action for breach of an implied covenant of good faith and fair dealing which it found to be implied in an employment contract for a term of years, the court stated that "[a]t will employment contracts do not give rise to a cause of action for breach of an implied promise of good faith and fair dealing."Id.

I further note that, to the extent plaintiff relies on alleged violations of public policy in Count IV to sustain his claim based on an implied covenant of good faith and fair dealing, the claim must fail because, as discussed below, I find the allegations in Count IV do not bring plaintiff's claim within the public policy exception to the employment at will doctrine. Thus, because no Virginia authority exists to imply a covenant of good faith and fair dealing to an at will employment contract, and for the reasons stated above, the defendant's demurrer to Count III is sustained.

*4 Count IV of the plaintiff's Second Amended Motion for Judgment alleges that the defendant's termination of the plaintiff constitutes a wrongful and abusive discharge because the plaintiff was fired for complaining about the defendant's claimed discrimination against employees who have dependents. In its demurrer the defendant argues that a claim for wrongful discharge under these alleged facts will not lie because a statutory exception to the at will doctrine which expressly protects employees who complain to their employer about the manner in which employees with dependents are treated does not exist and thus a statutorily created right is not implicated.

The plaintiff points to the Virginia Human Rights Act which provides that it is the policy of the Commonwealth of Virginia to safeguard all individuals within the state from unlawful discrimination in employment because of marital status. Va. Code Ann. ' 2.1-715 and ' 2.1-716 (Repl. Vol. 1987 and Supp. 1991). The plaintiff argues that employees with dependents are almost exclusively married employees, and, therefore, the defendant's termination of the plaintiff because of his complaints with respect to the defendant's treatment of employees with dependents violates the Commonwealth's policy against discrimination on the basis of marital status. Thus, the plaintiff claims that this case falls within the public policy exception to the employment at will doctrine.

Even assuming that the defendant's alleged discrimination violates the public policy against discrimination in employment on the basis of marital status embodied in ' 2.1-715 and ' 2.1-716, I find that this statute was not intended to create a new exception to the employment-at-will doctrine under the Virginia Supreme Court's holding in Bowman v. State Bank of Keysville, 229 Va. 534 (1985). Section 2.1-725 of the Human Rights Act specifically provides that "[n]othing in this chapter creates, nor shall it be construed to create, an independent or private cause of action to enforce its provisions. Nor shall the policies or provisions of this chapter be construed to allow tort actions to be instituted instead of or in addition to current statutory actions for unlawful discrimination." Va. Code Ann. ' 2.1-275 (Repl. Vol. 1987). See also Mulvey v. Gondles, 9 Va. Cir. 225 (1987). Therefore, the plaintiff's wrongful discharge cause of action based on this statute must fail, and the defendant's demurrer to this Count must be sustained.

Counsel for the defendant shall prepare an order reflecting this decision, forward it to opposing counsel for endorsement as to form, and then to the Court for entry by November 22, 1991.

Va.Cir.Ct. 1991.
Schryer v. VBR
Not Reported in S.E.2d, 25 Va. Cir. 464, 1991 WL 835295 (Va. Cir. Ct.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey S. Jacobovitz, an attorney, on **April 24, 2008**, caused a true and correct copy of

*Defendants' Motion to Dismiss and Supporting Points and Authorities,* to be served upon the

following via CM/ECF and U.S. Mail:

Alisa H. Reff, Esq.
D.C. Bar No. 423113
1500 K Street, N.W.
Washington, D.C. 20005-1209
Tel:  (202) 842-8852
Fax:  (202) 842-8465
Email:  Alisa.Reff@dbr.com

Thomas J. Barton, Esq.
James G. Fannon, Esq.
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Tel:  (215) 988-2863
Fax:  (215) 988-2757
Email:  Thomas.Barton@dbr.com
Email:  James.Fannon@dbr.com

_____/s/ Jeffrey S. Jacobovitz_____
Jeffrey S. Jacobovitz

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRIAN H. SIMMS                                :
                                              :
                 Plaintiff,                   :
                                              :        **Case:  1:08-cv-00177-RWR**
        v.                                    :        **Hon. Richard W. Roberts**
                                              :
BALL STREET VENTURES, LLC, et al. :
                                              :
                 Defendants.                  :
                                              :

## ORDER

Having read and considered the motion of Defendants Ball Street Ventures, LLC ("Ventures"), Ball Street Partners, LLC ("Partners"), Ball Street Fund, LLC ("Fund"), Christian Laettner ("Lattner"), and Brian K. Davis ("Davis"), (Collectively "Defendants"), to dismiss Fund, Davis and Laettner as parties to this action, and to dismiss Counts II and III of Plaintiff's Complaint, it is, this _____ day of _____, 2008,

**ORDERED** that the Defendants' motion to dismiss Fund, Davis and Laettner as parties to this action, and to dismiss Counts II and III of Plaintiff's Complaint,  is **GRANTED**.

_____
**Richard W. Roberts, Judge**
United States District Court
for the District of Columbia

Copies to:
Jeffrey S. Jacobovitz, Esq.
Schiff Hardin LLP
1666 K Street, N.W., Suite 300
Washington, D.C. 20006
Fax:  (202) 778-6460
Email:  jjacobovitz@schiffhardin.com

Alisa H. Reff, Esq.
Drinker, Biddle & Reath LLP
1500 K Street, N.W.
Washington, D.C. 20005-1209
Fax:  (202) 842-8465
Email:  Alisa.Reff@dbr.com

Thomas J. Barton, Esq.
James G. Fannon, Esq.
Drinker, Biddle & Reath LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Fax:  (215) 988-2757
Email:  Thomas.Barton@dbr.com
Email:  James.Fannon@dbr.com